UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER<br>*Plaintiff*<br><br>v.<br><br>JERRY WAYNE KELLY, JR.; 4233 FOUNTAINEBLEAU DR NOLA LLC; 7927 1/2 BIRCH ST NOLA LLC; and INVESTMENT PROPERTIES OF J & L, LLC<br>*Defendants* | CIVIL ACTION NO.:18-8177<br><br>SECTION:<br><br>DIVISION:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE:<br><br>JURY DEMAND |

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES

Plaintiff, the Greater New Orleans Fair Housing Action Center, Inc. ("GNOFHAC"), by and through undersigned counsel, brings this action for declaratory and injunctive relief and damages against Defendants Jerry W. Kelly, Jr. and associated limited liability corporations for violations of federal and state civil rights laws. In support of its claims, Plaintiff respectfully represents the following:

### INTRODUCTION

1.

Beginning in March 2017, GNOFHAC became aware of allegations of illegal sex-based discrimination by JERRY W. KELLY, JR. (hereinafter "Kelly") being put forward by former and current tenants in a social media housing-related forum. The women detailed that Defendant Kelly created a hostile environment so severe that numerous tenants broke their leases and risked penalties rather than endure Kelly's sexually harassing behavior. The reported behavior included repeated demands for dates, offers to exchange rent for sexual favors, and his unauthorized

entries into rental units while tenants were alone and vulnerable.

2.

Based on that information, GNOFHAC conducted an investigation that revealed unlawful discriminatory practices on the basis of sex.  Former tenants confirmed that Defendant Kelly boasted of renting only to women, let himself into apartments without notice or consent, repeatedly asked for dates, and made offers to reduce rent if set up on dates with other women known to tenants.  In one instance, Kelly grabbed the buttocks of a woman when she signed the lease and told her that he only called her back to rent the unit because she sounded physically attractive on the phone.  A former leasing agent with detailed knowledge of Kelly's rental practices also independently contacted GNOFHAC and corroborated that Kelly discriminated against current and prospective tenants based on sex.

3.

Based on the foregoing, GNOFHAC coordinated testing that further confirmed discriminatory practices on the basis of sex.  Defendant Kelly promptly and reliably returned the calls of female testers and met with them in person about the advertised apartment units.  During those tests, Kelly made sexually suggestive comments about the female testers' appearances, attempted to steer female testers to more desirable apartments, and implied that he would adjust his rental terms based on their physical appearances.  Kelly did not return any of the male testers' phone calls.  In the only instance in which a male tester succeeded in scheduling an appointment to view a unit, Kelly directed him to view the property alone.

2

4.

Defendant Kelly's conduct constitutes housing discrimination against individuals because of their sex, violations of state and federal fair housing law for which Defendants are liable. GNOFHAC brings this suit to obtain relief for its injuries and to protect individuals from future housing discrimination.

## JURISDICTION

5.

This is an action alleging unlawful housing discrimination on the basis of sex in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.*, the Louisiana Equal Housing Opportunity Act of 1991, La. R.S. 51:2601, *et seq.*

6.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, §1343(a), and 42 U.S.C. § 3613(a)(1)(A).

7.

Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over claims arising under the laws of Louisiana, as they arise out of the same case or controversy as the federal claims within this Court's original jurisdiction.

## VENUE

8.

Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Louisiana.

## PARTIES

9.

Plaintiff GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER ("GNOFHAC") is a private, non-profit fair housing organization with a mission to eradicate housing discrimination in Louisiana. GNOFHAC seeks to promote equal housing opportunities in all housing transactions, including rentals. GNOFHAC advances its mission through a variety of activities, such as outreach, counseling, investigation, and enforcement.

10.

GNOFHAC is an "aggrieved person" as defined by the Fair Housing Act and has been injured by Defendants' sexually discriminatory rental practices through the diversion of its resources to investigate and counteract the discrimination and through the frustration of its mission occasioned by the Defendants' discriminatory rental practices.

11.

Defendant JERRY W. KELLY, JR. is a resident of the Parish of Orleans, Louisiana.

12.

Defendant JERRY W. KELLY, JR. is the owner and/or manager of multiple rental properties throughout the New Orleans area, individually and through various Louisiana-registered limited liability companies.

13.

On information and belief, Defendant JERRY W. KELLY, JR. is and was at all times relevant to this Complaint the owner in his individual personal capacity of the property comprising the rental units located at 4233 Fontainebleau Drive.

4

14.

On information and belief, Defendant JERRY W. KELLY, JR. is and was at all times relevant to this Complaint the owner in his individual personal capacity of the property comprising the rental units located at 7927 Birch Street.

15.

On information and belief, Defendant 4233 FOUNTAINEBLEAU DR NOLA LLC is a limited liability company incorporated under the laws of Louisiana and was at all times relevant to this Complaint the manager of the property comprising the rental units located at 4233 Fontainebleau Drive.

16.

On information and belief, Defendant 7927 1/2 BIRCH ST NOLA LLC is a limited liability company incorporated under the laws of Louisiana and was at all times relevant to this Complaint the manager of the property comprising the rental units located at 7927 Birch Street.

17.

On information and belief, Defendant JERRY W. KELLY, JR. is the registered agent for 4233 FOUNTAINEBLEAU DR NOLA LLC and 7927 1/2 BIRCH ST NOLA LLC, as filed with the Louisiana Secretary of State.

18.

During all times relevant to this Complaint, Defendant JERRY W. KELLY, JR. held himself out as the rental/leasing agent for units located at 4233 Fontainebleau Drive and 7927 1/2 Birch Street, including the units referred to in this complaint.

19.

Defendant INVESTMENT PROPERTIES OF J & L, LLC is a limited liability company

incorporated under the laws of Louisiana and registered with the Louisiana Secretary of State.

20.

Defendant JERRY W. KELLY, JR. is an officer of INVESTMENT PROPERTIES OF J & L, LLC, as filed with the Louisiana Secretary of State.

21.

Defendant INVESTMENT PROPERTIES OF J & L, LLC is the primary officer and manager of 4233 FOUNTAINEBLEAU DR NOLA LLC, as filed with the Louisiana Secretary of State.

22.

Defendant INVESTMENT PROPERTIES OF J & L, LLC is the primary officer and manager of 7927 1/2 BIRCH ST NOLA LLC, as filed with the Louisiana Secretary of State.

## FACTS

### *Complaint to Plaintiff GNOFHAC*

23.

In March 2017, GNOFHAC became aware of allegations of illegal sex-based discrimination by Defendant Kelly being made by former and current tenants in a social media housing-related forum.

24.

GNOFHAC reviewed numerous Facebook posts and online reviews of Defendant Kelly's properties written by his former tenants.  The posts detail Kelly's sexually harassing behavior towards female tenants, including sexual propositions and unauthorized and unannounced entry into their apartments.

6

25.

In August 2017, a former leasing agent for Defendant Kelly's properties contacted GNOFHAC.

26.

The agent has personal knowledge of Defendant Kelly's rental practices and stated that Kelly had engaged in a pattern of sex-based discrimination in his rental practices and was continuing to discriminate against current tenants and applicants on the basis of sex.

27.

The agent stated that Defendant Kelly prefers to rent to "young, skinny, white" girls.

28.

The agent stated that she personally witnessed Defendant Kelly turn away more qualified men to rent to women.

29.

The agent stated that Defendant Kelly sexually harassed several of his female tenants through sexual propositions, unauthorized and unannounced entry into female tenants' apartments, requests for dates, and multiple late-night phone calls.

30.

The agent stated that multiple female tenants of Defendant Kelly moved out before the expiration of the term of their lease because they felt unsafe and harassed by Kelly.

### *Plaintiff GNOFHAC's Interviews of Former Tenants*

31.

As a result the online reviews and the information from the former leasing agent, Plaintiff GNOFHAC conducted interviews with former tenants of Defendant Kelly.

32.

One former female tenant, "A.B.," who leased a unit from Defendant Kelly when she was approximately twenty years old, stated that Kelly told her he only rents to women.

33.

According to A.B., Defendant Kelly had leased every unit of the six-unit property in which the tenant lived solely to female tenants.

34.

A.B. stated that Defendant Kelly requested that she meet him at a restaurant to sign the lease and bought her several drinks during the meeting.

35.

A.B. stated that Defendant Kelly repeatedly let himself into her apartment without warning or her consent, including once at 6:00 a.m.

36.

A.B. stated that Defendant Kelly repeatedly asked her for dates and told her that he would reduce her rent if she "set him up on a date" with one of her female friends.

37.

A.B. lived in her unit for six months until Defendant Kelly's behavior led her to break her lease and move in with her friends to get away from Kelly.

38.

Another former female tenant, "B.C.," who leased a unit from Defendant Kelly when she was twenty-two years old, stated that Kelly had grabbed her buttocks without her consent when they met to sign the lease.

39.

During this meeting, Defendant Kelly explained that he only returned her call about the apartment because he believed she was attractive based on the sound of her voice.

40.

B.C. also stated that when Defendant Kelly learned she was married, Kelly stated that he would not have rented to her if he had known she had a husband.

41.

B.C. also stated that Defendant Kelly peered into her apartment windows when she was home and repeatedly entered her apartment without warning and without her consent.  Kelly once entered her apartment when she was in the shower.

### *GNOFHAC Testing Investigation*

42.

Based on the information from the online reviews, from the former leasing agent who complained to Plaintiff GNOFHAC, and from the interviews conducted with former tenants of Defendant Kelly, Plaintiff GNOFHAC conducted a testing investigation between April 26, 2017 and October 10, 2017, to assess whether unlawful discrimination was occurring at Defendants' properties.

43.

Testing is a simulated housing transaction that evaluates a housing provider's treatment of two individuals with very similar characteristics and qualifications, except that one of the individuals is a member of a class protected by the Fair Housing Act and the other is not. GNOFHAC trained the testers who performed the tests described herein to act as individuals seeking to rent one of Defendants' rental units as advertised.

*Test 1*

44.

GNOFHAC staff became aware of a vacancy for a one-bedroom rental unit located at 4233 Fontainebleau Drive, #7 in New Orleans through an advertisement placed on Craigslist.com on or about April 18, 2017.

45.

The advertisement instructed potential tenants to call "Jerry" at 628-3663.

46.

On April 26, 2017, female tester "Lisa" called the advertised phone number to inquire about the availability of the apartment.  Defendant Kelly answered the phone and arranged for Lisa to view 4233 Fontainebleau Drive, #7 on Saturday, April 29, 2017.

47.

On April 27, 2017 male tester "Alex" left Defendant Kelly a voicemail stating his interest in the advertised apartment and asked Kelly to call him back.

48.

On Saturday, April 29, 2017, Defendant Kelly permitted Lisa to view the apartment. Defendant Kelly arranged for the unit to be left unlocked, and Lisa and a female companion, tester "Rachel," viewed the unit unaccompanied by Kelly.

49.

After viewing the apartment, Lisa contacted Defendant Kelly.  Kelly invited her to meet him at another location, 2535 Calhoun Street, to discuss any questions she might have about the apartment.

50.

When Lisa and Rachel arrived at 2535 Calhoun Street, Defendant Kelly invited them inside.

51.

The location appeared to be a furnished residence with a couch for visitors and a desk in the corner.

52.

Defendant Kelly invited Lisa and Rachel inside and provided Lisa with an application.

53.

During their visit, Lisa and Rachel observed Defendant Kelly openly staring at their bodies and nibbling his lip as he looked at Lisa's legs.

54.

Lisa and Rachel felt unsafe during this encounter and were concerned Defendant Kelly would prevent them from leaving.

55.

Lisa did not contact Defendant Kelly again.

56.

Defendant Kelly never returned male tester Alex's call regarding his interest in the apartment.

57.

Alex was unable to view the apartment.

*Test 2*

58.

On May 3, 2017, female tester "Liana" called Defendant Kelly about 4233 Fontainebleau Drive, #7, which was still advertised as available.  Defendant Kelly and Liana arranged to tour the apartment the following day.

59.

Approximately two hours after tester Liana spoke with Defendant Kelly, male tester "Elan" called Kelly and left a voicemail message stating his interest in 4233 Fontainebleau Drive, #7.   Elan asked Defendant Kelly to call him back.

60.

Defendant Kelly did not return Elan's phone call.

61.

On May 4, 2017, Liana and a female companion, tester "Maddie," met Defendant Kelly at 4233 Fontainebleau Drive and viewed Apartment #3.

62.

Defendant Kelly explained that he was showing Liana and Maddie Apartment #3 because Apartment #7 had already been rented.

63.

On May 9, 2017, male tester Elan called Defendant Kelly for the second time.  Defendant Kelly answered the call.  They scheduled an appointment for Elan to view the available apartment the next day.  Defendant Kelly instructed Elan to contact him in the morning to confirm the viewing.

64.

The following morning at about 10:30 a.m., Elan called Defendant Kelly to confirm his appointment, per Kelly's instructions.

65.

Defendant Kelly did not pick up the call, and Elan left a message asking to see the apartment as they had arranged.

66.

Defendant Kelly did not return Elan's call.

67.

About an hour later, Elan called Defendant Kelly again and left a second message asking to see the apartment.

68.

Defendant Kelly did not return Elan's call and did not ever contact him again.

69.

Elan was unable to view the apartment.

### *Test 3*

70.

In the early evening of May 10, 2017—the same day that Defendant Kelly did not return Elan's calls regarding the appointment he had made with Elan—female tester "Hannah" called Kelly about the advertised apartment at 4233 Fontainebleau Drive, #7.

71.

Defendant Kelly answered the call and made an appointment for Hannah to view the apartment two days later.

72.

On May 12, 2017, Hannah and a female companion, tester "Michelle," met Defendant
Kelly at 4233 Fontainebleau Drive.

73.

Defendant Kelly showed the testers Apartment #3.

74.

While they were viewing the unit, Defendant Kelly forcefully slammed the door shut to
the apartment, shutting the female testers and Kelly inside.

75.

Defendant Kelly then invited Hannah and Michelle to meet him at his office at 2325
Calhoun Street so they could get an application, and then he left the room.

76.

Hannah and Michelle discussed their concerns about whether it would be safe for them to
follow Defendant Kelly.

77.

Hannah and Michelle met Defendant Kelly at 2325 Calhoun Street, where he provided
Hannah with an application.

78.

After Hannah told Defendant Kelly that she planned to continue viewing other
apartments, Kelly stated that she should let him know where she decides to live so that he
"[could] come check it out."

79.

On May 12, 2017, a few hours after the female testers met with Defendant Kelly, male

tester "Ryan" called Kelly regarding the advertised apartment on Fontainebleau Drive.

80.

Defendant Kelly told Ryan that the unit had been rented and ended the call.

81.

Three days later, on May 15, 2017, Liana received a text message from Defendant Kelly stating 4233 Fontainebleau Drive, #3 was still available.

82.

That same day, May 15, 2017, female tester "Renee" called Defendant Kelly and left a message stating that she was calling about the one-bedroom apartment on Fontainebleau Drive listed on Craigslist.

83.

Several days later, Defendant Kelly left a message on Renee's voicemail stating that he was returning her call about the one-bedroom apartment on Fontainebleau Drive and asking that she call him back.

### _Test 4_

84.

In the evening of October 3, 2017, female tester "Erin" called Defendant Kelly to inquire about viewing an advertised unit at 7927 Birch Street and left a message indicating her interest.

85.

The next morning, Defendant Kelly returned Erin's call and, in a voicemail message, invited her to call back for information about the apartment.

86.

Erin called Defendant Kelly back later that day and made an appointment with him to

view the apartment two days later, on October 6, 2017, at noon.

87.

On October 5, 2017, male tester "William" called Defendant Kelly, who answered the

phone, and made an appointment with Kelly to view the apartment on October 6, 2017, at 2:00

p.m.  During the call, Kelly instructed William to call him before the appointment to confirm it.

88.

On October 6, 2017, at about noon, Defendant Kelly met Erin at 7927 Birch Street and

toured the apartment with her.

89.

During the tour, Defendant Kelly told Erin that she was "an all grown up woman" and

that she was too "pristine and together" to live in the apartment at 7927 Birch Street.

90.

During the tour, Defendant Kelly offered to call his current tenants for Erin to see if any

of them were possibly planning to vacate other units that would be more suited to her.

91.

When Erin inquired about the application process, Defendant Kelly told Erin that she

only needed to fill out an application, and that he would forgo a credit check because she was a

"grown woman" and looked like she was valedictorian at her college.

92.

During the tour, Defendant Kelly repeatedly offered Erin an application for the unit.

93.

That same day, just before Erin met Defendant Kelly to tour the apartment, William

called Kelly to confirm their appointment as per Kelly's instruction, but Kelly did not answer the

call.

94.

When Defendant Kelly did not pick up, William left a voicemail message stating that he was calling to confirm the appointment.

95.

Defendant Kelly did not return William's phone call.

96.

Later that day, William called Defendant Kelly a second time in an effort to make an appointment to view the apartment at 7927 Birch Street.

97.

Defendant Kelly answered the call and informed William that he could not show him the unit that day as planned.

98.

Defendant Kelly agreed to allow William to view the apartment three days later.

99.

On October 10, 2017, Defendant Kelly left a key in the mailbox and instructed William over the phone to view the apartment on his own.

100.

After viewing the apartment, William called Defendant Kelly and asked about the application process.  Kelly said they could get together two days later around 4:30 or 5:00 p.m.

101.

During the call, Defendant Kelly did not volunteer information about the rental requirements.  When William asked what he should bring to the appointment, Kelly said he

could bring his driver's license, proof of employment, current lease, and a deposit check for $950.

102.

Defendant Kelly would not provide a specific time for the appointment and seemed eager to end the call.

103.

Defendant Kelly did not follow up with William about leasing the unit.

### *Injury to GNOFHAC*

104.

Plaintiff GNOFHAC represents the interests of the greater New Orleans community in combating housing discrimination.  Defendants' actions as alleged herein have frustrated GNOFHAC's mission by interfering with the right of New Orleans residents to equal housing opportunities.  GNOFHAC's efforts in furtherance of its mission have been directly harmed by Defendants' discrimination against individuals on the basis of sex.

105.

GNOFHAC has dedicated significant resources to identifying and counteracting the effects of Defendants' discrimination in the community.  Such resource expenditure includes GNOFHAC's dedication of staff time and organizational funds to identify Defendants' unlawful discrimination, to confirm Defendants' unlawful discrimination through witness interviews and testing, and to engage in education and outreach activities to counteract the effects of the discrimination. Such education and outreach activities include creation and circulation of brochures and advertisements addressing sex discrimination and sexual harassment in housing and presentations to student organizations.

18

106.

As a result of these identification and counteraction efforts, which GNOFHAC has made specifically in response to Defendants' conduct as alleged herein, GNOFHAC has diverted its resources away from other planned projects and activities essential to its mission, including investigative activities and initiatives, recruiting financial sponsors for GNOFHAC's annual fair housing summit, development of new fair housing educational materials, and publication of these materials.  The diversion of resources has directly resulted in harm to GNOFHAC's mission, decreased funding, and a delay in providing updated public and private educational presentations to individuals and stakeholder groups.

**Additional Allegations**

107.

The multifamily property located at 4233 Fontainebleau Drive, New Orleans, LA 70125 is a dwelling subject to the Fair Housing Act, 42 U.S.C. § 3602(b), and subject to no exemption pursuant to 42 U.S.C. § 3603(b).

108.

The multifamily property located at 7927 Birch Street, New Orleans, LA 70118 is a dwelling subject to the Fair Housing Act, 42 U.S.C. § 3602(b), and subject to no exemption pursuant to 42 U.S.C. § 3603(b).

109.

With respect to the conduct alleged above, Defendant Kelly acted with willful disregard, malice, or reckless indifference that his actions violated the Fair Housing Act.

**STATEMENT OF CLAIMS**

**FIRST CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3604(a),**
**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT REGULATIONS,**

<u>24 C.F.R. § 100.60(a)</u>

110.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

111.

By their conduct set forth above, Defendants refused to rent and made housing unavailable to a person on the basis of sex in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. § 100.60(a).

<u>SECOND CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3604(b),
U.S. DEPARTMENT HOUSING AND URBAN DEVELOPMENT REGULATIONS,
24 C.F.R. § 100.65(a)</u>

112.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

113.

By their conduct set forth above, Defendants discriminated against a person in the terms, conditions, and privileges of rental, or in the provisions of services and facilities in connection therewith on the basis of sex in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. § 100.65(a).

THIRD CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3604(c),
U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT REGULATIONS,
24 C.F.R. § 100.75(a)

114.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

115.

By their conduct set forth above, Defendants made statements indicating rental preferences, limitations, and discrimination based upon sex to Plaintiff GNOFHAC's testers in violation of the Fair Housing Act, 42 U.S.C. § 3604(c), and the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. § 100.75(a).

FOURTH CAUSE OF ACTION – LOUISIANA EQUAL HOUSING OPPORTUNITY ACT,
LA. R.S. § 51:2606(A)(1)

116.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

117.

By their conduct set forth above, Defendants refused to rent and made housing unavailable to a person on the basis of sex in violation of the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(1).

FIFTH CAUSE OF ACTION – LOUISIANA EQUAL HOUSING OPPORTUNITY ACT,
LA. R.S. § 51:2606(A)(2)

118.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

119.

By their conduct set forth above, Defendants discriminated against a person in the terms, conditions, or privileges of rental, or in the provisions of services or facilities in connection therewith on the basis of sex in violation of the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(2).

SIXTH CAUSE OF ACTION – LOUISIANA EQUAL HOUSING OPPORTUNITY ACT, LA. R.S. § 51:2606(A)(3)

120.

Plaintiff GNOFHAC re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-109 above.

121.

By their conduct set forth above, Defendants made statements indicating rental preferences, limitations, and discrimination on the basis of sex in violation of the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(3).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff GNOFHAC prays:

A.  That the Court declare Defendants' actions complained of herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.*; the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. §§ 100.60(a) 100.65(a) and 100.75(a); and the Louisiana Equal Housing Opportunity Act, La. R.S. § 51: 2601, *et seq.*

B.  That the Court permanently enjoin Defendants, their agents, employees, and successors from discriminating against any person on the basis of sex in violation of the Fair Housing Act of 1968, as amended, the Department of Housing and Urban

Development Regulations, and the Louisiana Equal Housing Opportunity Act, La.

R.S. § 51: 2601, *et seq.*

C.  That appropriate compensatory and punitive damages be awarded to Plaintiff

GNOFHAC and against Defendants.

D.  That Defendants be ordered to take appropriate, affirmative steps to ensure that the

activities complained of herein are not engaged in again by Defendants or any of their

agents or employees.

E.  That Plaintiff GNOFHAC be awarded costs and reasonable attorney's fees in this

action.

F.  That Plaintiff GNOFHAC be awarded such other and further relief as the Court

deems just and proper.

Respectfully submitted,

GREATER NEW ORLEANS FAIR HOUSING ACTION
CENTER (GNOFHAC)
404 South Jefferson Davis Pkwy.
New Orleans, LA 70119
ELIZABETH JOANNE OWEN, T.A.
Bar No. 33620
Email: eowen@gnofairhousing.org
(504)708-5291
(504) 684-5687
PETER THEIS
Bar No. 34786
Email: ptheis@gnofairhousing.org
(504) 208-5070

TULANE LAW CLINIC
6329 Freret Street
New Orleans, LA  70118
(504) 865-5153
(504) 862-8753 (fax)

By:

**/s/ M. Lucia Blacksher Ranier**
M. LUCIA BLACKSHER RANIER
Bar No. 26605
E-mail: lblacksh@tulane.edu
(504) 862-8892
SAMUEL BRANDAO
Bar No. 34456
E-mail: sbrandao@tulane.edu
(504) 865-5987
Supervising Attorneys

Attorneys for Plaintiff
GNOFHAC Cooperating Attorneys