UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREATER NEW ORLEANS FAIR                          CIVIL ACTION
HOUSING ACTION CENTER

VERSUS                                                          NO. 18-8177

JERRY WAYNE KELLY, ET AL.                    SECTION "R" (2)


## ORDER AND REASONS

Before the Court is a motion to enforce the settlement agreement, filed by plaintiff Louisiana Fair Housing Action Center ("LAFHAC"), formerly the Greater New Orleans Fair Housing Action Center.[1]  Defendants Jerry Wayne Kelly, Jr., 4233 Fontainebleau Drive NOLA, LLC, 7927 ½ Birch Street NOLA, LLC, and Investment Properties of J&L, LLC, oppose the motion.[2]


I.     ISSUES PENDING RESOLUTION

On March 2, 2022, the parties attended a status conference with Magistrate Judge Donna Phillips Currault, to discuss a possible resolution of the issues raised by plaintiff's motion.  At the conference, the parties agreed to reach a resolution as to a number of issues, including: (i) defendants' alleged failure to obtain plaintiff's approval for a qualified property manager;

---

[1]     R. Doc. 182.
[2]     R. Doc. 209.

(ii) the contents and form of defendants' disclosure of the settlement agreement and form for tenants wishing to opt into contact with defendant Jerry Kelly; and (iii) defendants' alleged failure to distribute notice and opt-in forms to all existing tenants.[3]  Accordingly, to the extent that plaintiff's motion seeks the Court's intervention with respect to these issues, the motion is DENIED WITHOUT PREJUDICE, subject to renewal if the issues are not ultimately resolved before Magistrate Judge Currault.

## II.   PAST VIOLATIONS OF THE SETTLEMENT AGREEMENT

Although the parties have agreed to resolve their disagreements as to the aforementioned issues, they continue to dispute whether defendant Jerry Kelly has, to date, violated the no-contact and no-entry provisions of the parties' settlement agreement.  The settlement agreement broadly prohibits contact between Kelly and any current, former, or prospective tenants.  The agreement states, in relevant part:

> During the ten (10) year period in which this agreement is in force, Defendant Jerry Kelly shall have no contact—including but not limited to contact in person, by phone, in writing or via electronic means—with any person who seeks to view or rent Defendants' rental properties or any former or current tenant for any reason, except as provided for in this paragraph.  Within one week of the execution of this agreement, the Property Manager shall provide written notice to all current tenants that Jerry Kelly

---

[3]   *See* R. Doc. 224 (Minute Entry) (Mar. 2, 2022).

shall have no contact with them . . . . That written notice must include contact information for the person(s) to whom tenants will direct maintenance requests, management inquiries, and general communications going forward. That written notice must also include an explanation that any current tenant who seeks to have contact with Jerry Kelly must first opt-in by providing written notice to the Property Manager. . . . For any tenant who, in writing, opts-in to having contact with Jerry Kelly, the no-contact rule as described in this document shall not apply.[4]

The settlement agreement further provides that "Defendant Jerry Kelly shall refrain from entering the premises of any of Defendants' rental properties."[5] There are only two exceptions:

1. In the event of an emergency, such as a fire, flood or natural disaster, Defendant Jerry Kelly may enter the affected rental property.

2. Defendant Jerry Kelly may enter an unrented unit only after providing 24-hours' written notice to residents of the building in which the unrented unit is located and only when accompanied by the Property Manager.[6]

Plaintiff has submitted sworn declarations and supporting documentation indicating that, on multiple occasions, defendant Jerry Kelly contacted current and prospective tenants who had not signed an opt-in form. Defendants have submitted no evidence to rebut these claims. Specifically, defendants submit nothing in response to plaintiff's evidence

---

[4] R. Doc. 182-3 at 3-4 (Settlement Agreement).
[5] *Id.* at 4.
[6] *Id.*

that Kelly communicated with at least six prospective tenants who expressed interest in renting his units.[7]  These communications are clear violations of the settlement agreement's provision that "Kelly shall have no contact—including but not limited to contact in person, by phone, in writing or via electronic means—with any person who seeks to view or rent Defendants' rental properties."[8]

Defendants have also failed to rebut or otherwise undermine plaintiff's evidence that Kelly has engaged in unauthorized contact with current tenants.[9]  While defendants protest that two of the declarants, Suzannah Milby and Rebecca Martinez, eventually signed opt-in forms,[10] this fact does nothing to excuse Kelly's contact with Milby and Martinez before they opted into contact with him.  And defendants have left the other instances of unauthorized contact with current tenants completely unaddressed.  These

---

[7]    *See* R. Doc. 182-7 (Declaration of Stephany Peceimer); R. Doc. 182-12 (Declaration of Emily Krupp); R. Doc. 182-13 (Declaration of Michelle Morgan); R. Doc. 182-14 (Declaration of Claire Mehling); R. Doc. 182-15 (Declaration of George Martin); R. Doc. 220-3 (Declaration of Annie Rhodes).

[8]    R. Doc. 182-3 at 3 (Settlement Agreement).

[9]    R. Doc. 182-4 (Declaration of Suzannah Milby); R. Doc. 182-5 (Declaration of Rebecca Martinez); R. Doc. 182-6 (Declaration of Alexandra Blankenburg); R. Doc. 182-7 (Declaration of Stephany Peceimer); R. Doc. 182-8 (Declaration of Alexandra Blankenburg); R. Doc. 220-3 (Declaration of Annie Rhodes).

[10]   *See* R. Docs. 209-5 & 209-6.

interactions are blatant violations of the settlement agreement's provisions that "Kelly shall have no contact—including but not limited to contact in person, by phone, in writing or via electronic means—with . . . any former or current tenant for any reason," unless they have signed an op-in form.[11]

Nor have defendants contested plaintiff's evidence that Kelly conducted unauthorized visits to occupied rental units, including in March of 2020, when Kelly entered the apartment of Lilith Valentin to address an issue with her lights.[12]  Additionally, a supplemental declaration submitted by plaintiff—and uncontroverted by defendants[13]—indicates that in December of 2021, Kelly entered Annie Rhodes's unit unannounced and talked to her about some furniture in the unit, and later in the day brought her oysters and told her how to store them.[14]  The Court finds that Kelly has plainly violated the settlement agreement's provision prohibiting him "from entering the premises of any of Defendants' rental properties" except "[i]n the event of an emergency, such as a fire, flood or natural disaster."[15]

Finally, defendants have not refuted plaintiff's evidence that Kelly has advertised his rental properties to the public using his personal contact

---

[11]   R. Doc. 182-3 at 3 (Settlement Agreement).
[12]   R. Doc. 182-8 (Declaration of Alexandra Blankenburg).
[13]   *See* R. Doc. 227; R. Doc. 227-1 (Declaration of Jerry W. Kelly, Jr.).
[14]   R. Doc. 220-3 (Declaration of Annie Rhodes).
[15]   R. Doc. 182-3 at 4 (Settlement Agreement).

information.  Specifically, plaintiff submits a photograph of a "For Lease" sign outside of one of Kelly's units, which lists a phone number.[16]  According to a sworn declaration by George Martin, when Martin called the listed number, Kelly answered the phone, and offered to set up a visit of the unit.[17] Because any advertisement containing Kelly's phone number necessarily invites prohibited contact with Kelly, the Court finds that Kelly violated the settlement agreement by advertising his personal phone number in connection with rental advertisements.

In sum, the Court finds that Jerry Kelly has engaged in repeated violations of the no-contact and no-entry provisions of the settlement agreement.  In light of this evidence, the Court reiterates and makes clear that Kelly commits a violation of the settlement agreement any time he communicates—in person, in writing, or by phone call, text message, social media, or other electronic means—with (i) any current tenant who has not, at the time of contact, signed and returned an opt-in form; or with (ii) any prospective tenant, *i.e.*, any person who inquires about or expresses an interest in viewing or renting any of Kelly's properties, if that prospective tenant has not, at the time of contact, signed and returned an opt-in form.

---

16      R. Doc. 182-17.

17      R. Doc. 182-15 ¶¶ 3-12 (Declaration of George Martin).

The Court also reiterates the settlement agreement's unambiguous prohibition of Kelly's physical entry onto occupied properties, with only those narrow exceptions listed in the settlement agreement.

The Court further finds that the settlement agreement prohibits Kelly from advertising his phone number or other personal contact information to prospective tenants—whether online, in hardcopy advertisements, or on signage in front of his units—and from providing new or updated contact information to current tenants who have not signed an opt-in form.

Having reiterated and interpreted the provisions of the settlement agreement, the Court HEREBY ORDERS that defendant Jerry Kelly shall comply with his obligations under the agreement. Any further violations will be punishable as contempt.

## III.   CONCLUSION

For the foregoing reasons, plaintiff's motion to enforce the settlement agreement[18] is GRANTED in part, and DENIED in part. The motion is GRANTED insofar as plaintiff seeks a finding that Kelly has violated the settlement agreement by interacting, communicating, and making himself available for contact, with current and prospective tenants, without those

---

[18]      R. Doc. 182.

tenants' written opt-in, and by physically entering multiple tenants' units. Defendant Kelly is ORDERED to comply with the settlement agreement, and is hereby advised that further violations will be punishable as contempt.

The motion is DENIED WITHOUT PREJUDICE as to the issues slated for amicable resolution, as enumerated above.

New Orleans, Louisiana, this ___8th___ day of March, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE